## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DEMETRIA CLARKE,
    *Plaintiff*,

v.

No. 3:19-cv-01825 (JAM)

ANDREW M. SAUL, *Commissioner,*
*Social Security Administration,*
    *Defendant*.

## ORDER GRANTING MOTION TO AFFIRM THE
## DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND DENYING
## MOTION TO REVERSE

Plaintiff Demetria Clarke has long suffered from several physical and mental impairments. She has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security. Clarke has filed a motion to reverse the decision of the Commissioner (Doc. #14), and the Commissioner has filed a motion to affirm (Doc. #17). For the reasons discussed below, I will grant the Commissioner's motion to affirm and deny the motion to reverse.

### BACKGROUND

The following facts are taken from transcripts provided by the Commissioner. *See* Doc. #18-1.[1] Clarke's health began to deteriorate in 2015. She was hospitalized multiple times due to depression, post-traumatic stress disorder, and migraines in 2015 and 2016. *Id.* at 31 (Tr. 24). Clarke was morbidly obese in 2015 and was diagnosed with diabetes in 2016. *Id.* at 30-31 (Tr. 23-24). In 2017, Clarke was hospitalized due to mental health symptoms. *Id.* at 31 (Tr. 24). She

---

[1] Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).

experienced bouts of homelessness and had difficulty adhering to her medication regimen throughout 2015, 2016, and 2017. *Ibid.*

Clarke filed a Title II application for disability and a Title XVI application for supplemental security income benefits on February 15, 2017, alleging disability beginning June 1, 2015. *Id.* at 21 (Tr. 14).  Both claims were denied on September 26, 2017, and again upon reconsideration on January 22, 2018. *Ibid.* She then timely filed a written request for a hearing.

Clarke did not appear and testify before the Administrative Law Judge ("ALJ") on the first hearing held on October 25, 2018. *Ibid.* A vocational expert testified at the hearing. *Ibid.* After a notice for failure to appear was issued, Clarke appeared and testified at a supplemental hearing before the ALJ on February 26, 2019. *Ibid.* She was represented by counsel at both hearings. *Ibid.*

On April 15, 2019, the ALJ issued a decision concluding that Clarke was disabled within the meaning of the Social Security Act from July 13, 2015 through December 31, 2017. The ALJ, however, further concluded that medical improvement occurred by January 1, 2018, such that Clarke was no longer disabled after that date. Doc. #18-1 at 40 (Tr. 33). On September 16, 2019, the Appeals Council denied Clarke's request for review of the ALJ's decision. *Id.* at 8-10 (Tr. 1-3). Clarke then timely field this federal action seeking review of the ALJ's decision. Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy.'"

*Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in

significant numbers either in the region where [claimant] live[s] or in several other regions of the

country," and "when there is a significant number of jobs (in one or more occupations) having

requirements which [claimant] [is] able to meet with his physical or mental abilities and

vocational qualifications." 20 C.F.R. §§ 404.1566(a)-(b), 416.966(a)-(b); *see also Kennedy v.*

*Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

   The agency engages in the following five-step sequential evaluation process to determine

whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or his past
> relevant work despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).

   In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a

particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proving the case at Steps

One through Four; the burden shifts at Step Five to the Commissioner to demonstrate that there

is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir.

2014).

At Step One, the ALJ determined that Clarke had not engaged in substantial gainful activity since March 25, 2015, which was the alleged onset date of the prior, reopened application. Doc. #18-1 at 25 (Tr. 18). At Step Two, the ALJ concluded that Clarke suffered from migraines, a medically determinable impairment for the period from March 25, 2015, the alleged onset of the prior application through July 13, 2015, the date the claimant became disabled. Doc. #18-1 at 26 (Tr. 19). The ALJ also concluded that from July 13, 2015 through December 31, 2017, Clarke suffered from the following severe impairments: post-traumatic stress disorder ("PTSD"), borderline personality disorder ("BPD"), obesity, poorly controlled diabetes mellitus, migraines, and osteoarthritis of the left hip. *Id.* at 27 (Tr. 20). The ALJ concluded that Clarke continued to suffer from the same severe impairments after January 1, 2018. *Id.* at 34 (Tr. 27).

At Step Three, the ALJ determined that from July 13, 2015 through December 31, 2017, and also for the period beginning in January 1, 2018, Clarke did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 28 (Tr. 21), 34 (Tr. 27). The ALJ then found that from July 13, 2015 through December 31, 2017, Clarke had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(a), subject to certain exceptions including that Clarke would likely be absent from work over four times per month on a regular and continuing basis. *Id.* at 30 (Tr. 23). For the period beginning on January 1, 2018, the ALJ determined that Clarke had the same RFC except that the RFC no longer contained the limitation that she would likely be absent from work over four times per month on a regular and continuing basis. *Id.* at 37 (Tr. 30).

At Step Four, the ALJ determined that Clarke was unable to perform any past relevant work since March 25, 2015. *Id.* at 32 (Tr. 25), 38 (Tr. 31). At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Clarke's age (34), education (at least high school), work background, and residual functional capacity could perform no jobs that existed in significant numbers in the national economy from July 13, 2015 through December 31, 2017. *Id.* at 33 (Tr. 26). On the other hand, the ALJ found that as of January 1, 2018, Clarke had medical improvement, an enhanced RFC, and—based on the testimony of the vocational expert—that Clarke could perform jobs that existed in significant numbers in the national economy including the jobs of a garment folder, poultry boner, and dry cell battery assembler. *Id.* at 39-40 (Tr. 32-33).

Thus, the ALJ ultimately concluded that Clarke was disabled within the meaning of the Social Security Act from July 13, 2015 through December 31, 2017. *Id.* at 34 (Tr. 27). But the ALJ further concluded that Clarke was no longer disabled as of January 1, 2018. *Id.* at 40 (Tr. 33).

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(1) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it

considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003). I will consider each of Clarke's arguments in turn.

### *Step Three findings*

Clarke argues that the ALJ erred in failing to find that her mental impairments met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step Three, the ALJ found that Clarke suffered from medically recognized impairments, including the mental health conditions PTSD and BPD, but that they did not meet or equal the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Doc. #18-1 at 27 (Tr. 20).

According to Clarke, the ALJ erred by failing to find that her mental health impairments met or equaled the criteria of Listing 12.04, which concerns depressive, bipolar, and related disorders. Doc. #14-1 at 9-11. As Clarke acknowledges, this listing includes criteria that are set forth in three paragraphs (paragraph A, paragraph B, and paragraph C), and it requires that her impairments meet the requirements of *both* paragraphs A and B or, alternatively, that her impairments meet the requirements of *either* paragraph A *or* paragraph B *and* paragraph C. *Id.* at 9 n.1 (quoting the criteria of Listing 12.04); *see also Gibson v. Saul*, 2021 WL 371577, at \*4 (D. Conn. 2021).

As an initial matter, Clarke does not challenge the ALJ's conclusion that her condition does not meet the criteria for paragraph B. Doc. #18-1 at 29 (Tr. 22). Accordingly, even if Clarke is correct that her condition satisfied the criteria under paragraph A, she still must show that the ALJ erred in finding that she did not meet the criteria under paragraph C.[2]

---

[2] The ALJ's decision does not reference Listing 12.04 but instead references Listing 12.08, which covers personality and impulse-control disorders, and Listing 12.15, which covers trauma and stressor-related disorders. *See* Doc. #18-1 at 29 (Tr. 22), 35 (Tr. 27). Because the criteria for paragraph C is the same under Listing 12.04 as it is for Listing 12.15, *see Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 531 (S.D.N.Y. 2019), any possible error by the ALJ in

The conditions of paragraph C are satisfied if a claimant shows a medically documented history of a mental disorder over a period of two years and if there is evidence of both "medical treatment, mental health therapy, psychological support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms" and "minimal capacity to adapt to changes in your environment or to demands that are not already part of [the claimant's] daily life." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00A2. Clarke argues that she has minimal capacity to adapt to changes in her daily life, citing as evidence that she sometimes secludes in her room and does not do much of anything, gets "stuck" on one line of crochet work, and has made many terrible decisions. Doc. #14-1 at 11.

To be sure, Clarke has serious mental impairments that require ongoing treatment and coping mechanisms, but the ALJ cited exhibits reflecting that with treatment Clarke is able to adapt to changes in her environment. After losing her job as a bank teller in 2015, Clarke moved into a new apartment to save money. Doc. #18-1 at 495 (Tr. 488). By December 2017, Clarke was taking care of an elderly person twice a week, and by 2018 she was planning to train as a home health aide. *Id.* at 1789 (Tr. 1782). Clarke also sought out and found a free program to train her as a home health aide and began attending a woman's support group and parenting skills program. *Id.* at 1868 (Tr. 1861). When Clarke moved in with a man and then decided that living with him was unsafe, she successfully extricated herself from the situation. *Id.* at 1867 (Tr. 1860).

In short, there was substantial evidence to show that Clarke had more than minimal capacity to adapt to changes in her environment and to demands that were not already part of her daily life. *See Gibson*, 2021 WL 371577, at *5 (substantial evidence supported ALJ's

---

relying on Listing 12.15 rather than Listing 12.04 is harmless. *See Dustin R. v. Comm'r of Soc. Sec.,* 2020 WL 7257855, at *4 (W.D.N.Y. 2020).

determination that claimant did not meet paragraph C criteria where "the record reveals numerous instances of the Plaintiff engaging independently in a wide range of activities outside of the home on an ongoing basis without any apparent psychosocial supports"). Accordingly, I conclude that there is no basis to overturn the ALJ's finding at Step Three that Clarke's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

### Medical improvement related to work

Clarke challenges the ALJ's conclusion that her condition improved to the extent that she was no longer disabled as of January 1, 2018. A recipient's benefits may be terminated if the there is substantial evidence that the claimant's condition has improved to such an extent that the claimant is now able to work. *See* 42 U.S.C. § 423(f)(1); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). The burden rests with the Commissioner to demonstrate medical improvement relating to the ability to perform work. *See Susan A. v. Saul*, 2019 WL 6310730, at *2 (N.D.N.Y. 2019).

Clarke argues that the ALJ's conclusion that she experienced medical improvement as of January 1, 2018 is not supported by substantial evidence. Doc. #14 at 11-14. But the treatment Clarke received led to a period from July 2017 to November 2018 (the date of the last evidence from the record) in which she did not have any hospitalizations. *See id.* at 12. Treatment notes from October 28, 2017 reflect that Clarke was following her medication regimen, had "stabilized," and was considering different types of training in preparation to obtain employment. Doc. #18-1 at 1354-55 (Tr. 1347-48). Treatment notes from December 2017 onward indicate that Clarke was "goal-directed." *Id.* at 1778 (Tr. 1771). In December 2017, Clarke reported to her doctor that she had begun working as a caseworker for an elderly person in her grandmother's building, *id.* at 1787 (Tr. 1780), and in January 2018 that she enjoyed working as a caregiver. *Id.*

at 1789 (Tr. 1782). She spoke with her doctor about seeing an employment specialist. *Id.* at 1788 (Tr. 1781). In July 2018, she reported that she had been applying for jobs as a health aide. Doc. #18-1 at 1762 (Tr. 1755).

Although treatment records from 2018 indicate that Clarke continued to have limited insight and judgment, her behavior was "well-regulated," and her mood was "better." *Id.* at 1764 (Tr. 1757), 1768 (Tr. 1761). There was substantial evidence to support the ALJ's conclusion that her condition had improved as of January 1, 2018. Doc. #18-1 at 36-37 (Tr. 29-30).

### *The RFC finding*

Clarke argues that the ALJ erred in determining Clarke's RFC for the time period after January 1, 2018. Doc. #14-1 at 14. According to Clarke, the RFC should have contained a limitation that Clarke "would likely be absent from work over four times per month on a regular continuing basis," which was a limitation that had been included in the ALJ's RFC for the earlier period of disability from July 13, 2015 to December 31, 2017. *Ibid.*

I conclude that the ALJ's determination of Clarke's RFC is supported by substantial evidence. The ALJ concluded that prior to January 1, 2018, Clarke would be absent from work over four times a month because her mental health was not under control and because Clarke had repeated psychiatric hospitalizations and required intensive outpatient treatment. Doc. #18-1 at 31 (Tr. 24). By contrast, Clarke's treatment notes from 2018 reflect that Clarke's mental health symptoms had improved, that she was taking her medications, that she had worked two days per week to help a disabled man, that she was looking for an apartment, and that she was taking steps toward finding a job as a home health aide. *Id.* at 37 (Tr. 30). This evidence was enough for the ALJ to make an RFC determination that did not include a limitation that Clarke would be absent from work over four times per month on a regular and continuing basis.

9

CONCLUSION

For the reasons set forth above, the Commissioner's motion to affirm (Doc. #17) is

GRANTED, and plaintiff's motion to reverse (Doc. #14) is DENIED. The Clerk of Court shall

close this case.

Dated at New Haven this 8th day of February 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge